## Bredt v. Perkiomen School

*Thomas F. Doran*, for plaintiff.

*Jonathan B. Hillegass*, of *Hillegass & Moran*, for defendant.

CORSON, J., February 23, 1943.—Plaintiff in the present case entered his son as a student at the defendant school. At the end of a period of two or three weeks the boy was dismissed from school and plaintiff has brought suit to recover the sum which he had paid as the first half of the annual tuition charge. The jury returned a verdict in favor of defendant and the present motion followed.

Admittedly, the boy in this case was a problem child who had been guilty of stealing, failing to attend school, and various other delinquencies in Philadelphia.

Plaintiff went to Dr. Tobias, headmaster of the defendant school, and explained to him these circumstances. After one or two conferences at one of which the boy was present and interviewed by Dr. Tobias, the boy was accepted as a pupil at the school. According to the contention of plaintiff the boy was to be given 24-hour supervision in an effort to improve his habits. At the end of about the second week the boy had enough points under the school disciplinary system to allow him to leave for his home on Friday night, for the week-end. Before that Friday night arrived, however, as a result of some breach of discipline, the boy did not have enough points to allow him to leave on Friday night.

The boy then took his case directly to the headmaster and was given permission to leave on Saturday morning. The student council, in making a bed checkup on Friday night, found that the boy was not present on Friday night. An investigation disclosed that he had left on the Friday evening train. After his return at the end of the week-end he was brought before the council and asked why he left on Friday night without permission. The boy then denied that he had left and insisted that he had been at the school. In spite of everything that the members of the student council could do, the boy continued this denial. He was told that if he continued to lie he would be dismissed and, when he refused to tell the truth, the student council recommended his dismissal and he was expelled from the school. The present suit then followed.

It seems to be the contention of plaintiff that he had some verbal agreement with the school under which the boy could be dismissed only for stealing or sexual misconduct. However, the only testimony as to what was said by Dr. Tobias is on page 10 of the record where Dr. Tobias said:

"You understand that if the boy steals anything, or if there is anything missing, or if there is any sex misconduct the boy will be instantly dismissed."

Even admitting this to be a fact, the statement of Dr. Tobias does not limit the right of the school to expel the boy for other offenses. Certainly that statement does not limit the power of the school to dismiss.

The statement must be construed as simply meaning that for these particular offenses the boy would be instantly dismissed. There is nothing in the testimony that seems to require the school to change its regulations or rules in this particular case. The school agreed to give him a final chance to make good, but certainly no agreement was entered into to allow him any special privileges. Irrespective of this conversation, however, plaintiff admittedly signed a registration certificate, or whatever it may be called, which read as follows:

"I hereby enter my son as a student at Perkiomen School for the academic year, beginning September 1941, subject to the regulations of the school regarding the admission of students and the payment of fees as stated in the catalogue of schools. I therefore enclose my check for $25.00 as the required registration fee."

This certificate was dated November 1, 1941.

Page 26 of the catalogue of Perkiomen School provides that:

"Students are registered only upon the express condition that they matriculate and remain at the school until the end of the school year unless dismissed for breach of school discipline. In case of such dismissal, or in case of voluntary withdrawal, no rebate will be made on account of tuition, board, or other charges; any money already paid to the school, on account of tuition, board, or other charges, will be retained by it as earned, or as liquidated damages, and any unpaid balance of the total year's account for these items shall become immediately due and payable to the school as earned."

The jury was justified in finding that plaintiff had received a copy of the catalogue and that he knew, or

should have known, this particular provision with regard to fees, tuition, etc. Certainly this provision was not affected or changed by the statement of Dr. Tobias that the boy would be immediately dismissed if he did certain things. Plaintiff contends that certain evidence was erroneously admitted. He contends that Dr. Tobias testified that the station agent had been interviewed and stated that he had seen a boy fitting the description of plaintiff's son, Robert Bredt, buy a ticket and board a train for Philadelphia, on Friday evening. This was certainly hearsay and if it had been objected to the objection might well have been sustained. However, the probable reason for no such objection was because of the fact that plaintiff himself testified that the boy did arrive home on Friday night. That fact being admitted, any hearsay testimony in regard to it could not be prejudicial to plaintiff's case.

The boy was not dismissed because he left school on Friday evening without permission but because he lied and refused to tell the truth about what he had done. When the student council made the recommendation that this boy should be dismissed from school for lying, certainly the headmaster of the school was not in a position to say this boy was a liar and a thief when he came here and must be given different treatment from the other boys in the school. When the plaintiff filed the enrollment certificate and agreed to be bound by the terms of the catalogue he became so bound: Barker v. Bryn Mawr College, 278 Pa. 121 (1923).

The jury, after being out some time, returned with a written question. The jury wished to be instructed as to whether or not it could return a partial verdict. The trial judge in so many words told the jury that it could. We are doubtful as to whether or not this was a proper instruction. However, the instruction was, of course, favorable to plaintiff and no complaint is made of such instruction. The trial judge, however, then called the jury's attention to the law that where

certain negotiations are had between two parties and then a written agreement is entered into the written agreement negatives any earlier parol negotiations that are in conflict with the written agreement. This we feel to be the law.

Plaintiff now complains that the enrollment certificate was improperly admitted because not properly pleaded in the affidavit of defense. The affidavit of defense says that "Although there was no written instrument stating all the material terms, certain terms of said contract were in writing and were contained in a provision on page 26 of the catalogue . . ." That provision has been set out in full earlier in this opinion.

The statement that no one instrument states all the material terms is certainly correct since the terms of the agreement under which the boy was entered in the school are set forth in two instruments: First, the enrollment certificate, and second, the provisions of the catalogue. The enrollment certificate may be said to be the evidence showing that plaintiff was bound by the provision of the catalogue.

Defendant also set forth, in paragraph 10 of the affidavit of defense, that "It is denied that the contract was oral in its entirety." The reason for this denial is the fact that the plaintiff seeks to show that the contract under which the boy was entered into the school was entirely a verbal contract between plaintiff and the school, acting through its headmaster, Dr. Tobias. On page 45 of the testimony the enrollment certificate was offered in evidence and admitted without objection by plaintiff. Certainly plaintiff cannot take his chances on a verdict and then complain about the admission of the enrollment certificate when no objection is made at the trial to its admission.

Plaintiff contends in his reasons for a new trial that the verdict was against the evidence, the weight of the

evidence, the law, and the weight of the law. We feel that these reasons are without merit.

The fifth reason sets forth "such other reasons as the notes of testimony will disclose". No additional reason in support of the motion was filed. While we may feel and the jury may well have felt under the circumstances some adjustment should have been made in view of the short time that the boy was in the school, yet under the facts and the law of the case we feel that the jury was justified in returning the verdict that it did and there is a serious question whether a verdict for plaintiff could have been sustained.

And now, February 23, 1943, for the reasons given, plaintiff's motion for a new trial is dismissed and the prothonotary is directed to enter judgment in favor of defendant in accordance with the verdict. An exception is allowed to plaintiff.